E-FILED
Tuesday, 11 September, 2018 03:12:23 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY,<br>  Plaintiff,<br><br>v.<br><br>AW DYNAMOMETER, INC., *et al*,<br>  Defendants. | Case No. 1:17-CV-01164-JES-JEH |

## ORDER

Now before the Court is the Defendants', AW Dynamometer, Inc., Christopher Robinson, Jon Robinson, and Delbert Robinson (the "AW Defendants") Motion for Judgment on the Pleadings. (D. 37).[1] The Plaintiff, Cincinnati Insurance Company ("Cincinnati"), filed a Memorandum in Opposition (D. 41) and the AW Defendants filed a Reply (D. 44). For the reasons stated, *infra*, the AW Defendants' Motion is GRANTED.

## BACKGROUND

Dyno Tech Services, LLC ("Dyno Tech") and Aaron Warsaw filed a lawsuit in Iowa state court against all of the Defendants in this matter—the AW Defendants, DCMJ, Inc., and David Koons. (D. 22-1); *Dyno Tech Services, LLC, et al v. AW Dynamometer, Inc., et al.*, Emmet Co., Iowa, No. LACV019262. Ultimately, the Iowa plaintiffs filed an amended petition at law alleging: (1) misappropriation of trade secrets; (2) conversion and civil theft; (3) intentional interference with an existing contractual relationship; (4) intentional interference with prospective business relationship, advantage or contract; (5) unfair competition; (6) defamation; (7) fraud; (8) civil conspiracy; and (9) unjust enrichment. (D. 22-2). Dyno Tech and Warsaw specifically claim that

---

[1] Citations to the Docket in this case are abbreviated as "D. __."

1

the Defendants in this matter committed their wrongs on or about November 16, 2015. *Id*. at pg. 4.

Dyno Tech designs, manufactures, sells, and services a unique type of brake system, commonly known as a dynamometer, which was invented by Warsaw. *Id*. at pg. 2. Koons was a Dyno Tech employee for approximately 10 months, ending his employment on November 30, 2015. *Id*. Dyno Tech and Warsaw allege Koons stole confidential trade secrets and other confidential information, including business records, notes, and client business cards, from them and gave it to AW Dynamometer. *Id*. at pp. 2-3. They assert that Koons began working for AW Dynamometer in December 2015, when he called Dyno Tech customers, represented that he was still working for Dyno Tech, told customers that the two companies had merged, and that Dyno Tech was no longer conducting maintenance and repair services on dynamometers. *Id*. at pg. 3. Dyno Tech and Warsaw also claim that the AW Defendants made knowingly false and malicious statements about Dyno Tech and began manufacturing and servicing dynamometers to the same specifications of Warsaw's invented dynamometer by using Dyno Tech's business records, which Koons stole. *Id*.

Cincinnati issued AW Dynamometer two insurance policies. The first policy provided coverage from April 1, 2012 to December 31, 2015. (D. 22-3 at pg. 1). The second was effective December 31, 2015 through December 31, 2016. (D. 22-8 at pg. 1). After the AW Defendants tendered their defense in the Iowa proceeding to Cincinnati, Cincinnati denied it had a duty to indemnify or defend the AW Defendants under the policies. Shortly thereafter, they brought the instant suit before this Court for declaratory judgment, later amending their Complaint. (D. 1); D. 22).

2

Cincinnati argued they were entitled to a declaration that the insurance policies they issued to AW Dynamometer do not require or obligate them to defend or indemnify the Defendants in the Iowa state court proceeding. (D. 22). Relevant to the Motion presently before the Court, Cincinnati asserted that Dyno Tech failed to allege damages arising from a personal and advertising injury. *Id*. at pg. 24. They also assert that to the extent the underlying complaint does allege a personal and advertising injury, the claim is barred under a specific provision of the policy. *Id*. at pg. 25. (referencing "section V. 14 of the E&O Coverage Part of the 2015 Policy."). This section of the 2015 policy states that personal and advertising injury means an injury arising out of the offense of, *inter alia*, "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]" (D. 22-8 at pg. 85).

Cincinnati also quoted language from the policies explicitly stating that they have no duty to defend suits seeking damages for personal and advertising injuries that: (1) are caused by an offense arising out of the business; (2) are caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and inflict personal and advertising injury; (3) arising out of oral or written publication done by or at the direction of the insured with knowledge of its falsity; (4) arising out of criminal acts committed by or at the direction of the insured; (5) arising out of the infringement of any intellectual property rights; (6) actions caused by or at the direction of the insured with the knowledge that the actions would violate the rights of another; (7) arising out of oral or written publication material at the direction of the insured with knowledge of its falsity; (8) arising out of a criminal act committed by or at the direction of the insured; or (9) arising out of infringement of intellectual property rights. (D. 22 at pp. 8-16).

All of the Defendants—with the exception of Koons—filed a joint Answer, Affirmative Defense, and Counterclaim (D. 28) in response to Cincinnati's Amended Complaint (D. 22). Cincinnati, in turn, filed an Answer. (D. 32).

The AW Defendants subsequently filed the instant Motion for Judgment on the Pleadings. (D. 37). They argue the Court should enter a partial judgment on the pleadings ordering that the Plaintiff has a duty to defend them in the Iowa lawsuit. *Id*. at pg. 1. The AW Defendants reason that declaratory judgment is appropriate because Dyno Tech is seeking damages from them in the Iowa state court proceeding due to alleged "defamatory or disparaging statements or writings caused by an offense arising out of AW Dyno's business, and/or... …from the lost use of tangible property caused by an occurrence." *Id*. at pg. 2. They further argue the Court should issue an order staying the remainder of the proceedings before this Court. *Id*. at pp. 2-3.

The AW Defendants claim that there are no disputed facts and that Cincinnati's policies require Cincinnati to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' and 'personal and advertising injury.'" (D. 37-1 at pp. 3-4) (citing D. 22-3 at pg. 29 and D. 22-8 at pg. 27, 33). They cite to the policies to support their contention that "'[p]ersonal and advertising injury' includes injury from libel, slander, or disparagement caused by an offense arising out of AW Dyno's business[]" and that "'[p]roperty damage' includes loss of use of tangible property caused by an occurrence." *Id*. at pg. 4. (citing D. 22-3 at pg. 47, 48; D. 22-8 at pg. 45, 46). Cincinnati asserts in response that the AW Defendants' arguments are unsupported by the allegations in the Iowa complaint. (D. 41 at pp. 7-17).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), parties may move for judgment on the pleadings after the pleadings are closed. A motion for judgment on the pleadings is reviewed under the same standard as a motion for summary judgment. *Alexander v. City of Chicago*, 994 F. 2d 333, 336 (7th Cir. 1993) ("[T]he standard courts apply for summary judgment and for judgment on the pleadings 'appears to be identical.'") (quoting 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1368 at 530 (1990)). As the party seeking grant of a Rule 12(c) motion, in order "to dispose of the case on the basis of the underlying substantive merits," the AW Defendants bear the burden of establishing that "no genuine issues of material fact remain to be resolved and" that they are "entitled to judgment as a matter of law." *Id*.

Insurers are obligated to defend their insureds against suits that allege facts potentially falling within the scope of their coverage. *Lyerla v. AMCO Ins. Co.*, 536 F. 3d 684, 688 (7th Cir. 2008) (citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E. 2d. 1092, 1098 (Ill. 2005)). An insurer is only justified in refusing to defend actions against its insured when "it is *clear* from the face of the underlying complaint[] that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Id*. (citing *United States Fid. & Guar. v. Wikin Insulation Co.*, 578 N.E. 2d 926, 930 (Ill. 1991) (emphasis in original)). In order to make this determination, the Court must compare the allegations of the underlying complaint to the policy, liberally construing them in favor of the insured. *Id*.; *United States Fid. & Guar. Co. v. Wikin Insulation Co.*, 578 N.E. 2d at 930. The parties acknowledge that this is the appropriate standard. (D. 37-1 at pg. 3); (D. 41 at pg. 5).

## ANALYSIS

As noted previously, the AW Defendants claim that Cincinnati's policies require Cincinnati to "pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' and 'personal and advertising injury.'" (D. 37-1 at pg. 4) (citing D. 22-3 at pg. 29 and D. 22-8 at pg. 27, 33). Notably, they assert that "'[p]ersonal and advertising injury' includes injury from libel, slander, or disparagement caused by an offense arising out of AW Dyno's business." *Id*. (citing D. 22-3 at pg. 47 and D. 22-8 at pg. 45).

Indeed, the unambiguous language of the policies explicitly state that personal and advertising injury means injury arising out of the offense of, *inter alia*, "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]" *e.g.* (D. 22-3 at pg. 47); (D. 22-8 at pg. 45, 85). Cincinnati and the AW Defendants cite the same policy language. (D. 22 at pg. 25) (referencing policy language found on D. 22-8 at pg. 85); (D. 37-1 at pg. 4) (citing D. 22-3 at pg. 47; D. 22-8 at pg. 45); see also (D. 41 at pg. 7, fn. 5). The underlying complaint alleges the defendants in that suit, including the AW Defendants, defamed them. (D. 22-2 at pp. 6-7).

Under Illinois law, insurance policy terms that are unambiguous are to be interpreted using their plain and ordinary meaning and given effect as written. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F. 3d 799, 804 (7th Cir. 2003). Liberally construing the policy in favor of the insured, the AW Defendants are entitled to judgment on the pleadings on the issue of defense. The alleged defamatory conduct is, at least, potentially covered under the policies at issue because they explicitly cover libel and slander. Cincinnati's claims that the underlying lawsuit does not present a claim for potential damages arising from a personal and advertising injury, as defined by the policy (D. 41 at pp. 7-12) is contradicted by the plain language of the policies.

Cincinnati further emphasizes that the underlying complaint contains a general allegation that the Defendants "knowingly" made false statements and the Iowa plaintiffs incorporated that statement into their defamation count. (D. 41 at pg. 8) (referencing D. 22-2 at pg. 3, 6). In their view, this conclusively demonstrates that the AW Defendants' actions exclude them from coverage under the policy. The AW Defendants' specific actions might permit Cincinnati to exclude them from policy coverage for indemnification purposes. The Court does not yet have sufficient information to make that determination. Cincinnati has failed to establish, however, that they are justified in refusing to defend the action against the AW Defendants in Iowa state court.

It is not clear from the face of the underlying complaint that the allegations fail to state facts which bring the case potentially within the policy's coverage. For now, the Court errs on the side of caution , noting that a "policy should not be interpreted as taking back with one hand what it gave with another, by excluding coverage of those torts because they are intentional." *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F. 3d 742, 746 (7th Cir. 2001). To find otherwise at this stage of the litigation would permit "the question of coverage [to] …hinge exclusively on the draftsmanship skill or whims of the plaintiff in the underlying action[,]" which the Court cannot do. *Id*. at 745 (citations omitted).

Cincinnati has not established that they are justified in refusing to defend the action against the AW Defendants in Iowa state court. It is not clear from the face of the underlying complaint that the allegations fail to state facts which bring the case potentially within the policy's coverage. Viewing the underlying complaint and the insurance policies in a light most favorable to the insureds—the AW Defendants—they are entitled to judgment on the pleadings on the issue of defense. Therefore, the AW Defendants' Motion for Judgment on the Pleadings is GRANTED.

Under Illinois law, insurers have a duty to defend a lawsuit if any part of it would require it to indemnify the insured. *Utica Mut. Ins. Co. v. David Agency Ins. Inc.*, 327 F. Supp. 2d 922, 926 (N.D. Ill. 2004) (citing *Md. Casualty Co. v. Peppers*, 355 N.E. 2d 24, 28 (Ill. 1976) and *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Serv.*, 43 F. 3d 1119, 1122 (7th Cir. 1994)). As such, the Court need not address the remainder of the AW Defendants' arguments on this subject in order to conclude that Cincinnati is required to defend them in the Iowa state court proceeding.

The AW Defendants further request that the Court stay the remainder of the proceedings before this Court until the underlying Iowa suit has been resolved. (D. 37-1 at pg. 15). They cite *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F. 3d 580, 583 (7th Cir. 2003) in support of their argument. *Id*. Cincinnati did not respond to this portion of the AW Defendants' argument.

The Seventh Circuit Court of Appeals stated in *Lear* that "decisions about indemnity should be postponed until the underlying liability has been established." 353 F. 3d at 583. The Appellate Court has also unambiguously concluded that "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Nationwide Ins. Co. v. Zavalis*, 52 F. 3d 689, 693 (7th Cir. 1995). Accordingly, the Court STAYS the remainder of the proceedings in this matter. Cincinnati is directed to file a status report on the Iowa state court proceeding by November 13, 2018.

## CONCLUSION

For the reasons stated, *supra*, the AW Defendants' Motion for Judgment on the Pleadings (D. 37) is GRANTED.

*It is so ordered.*

Entered on September 11, 2018

s/ James E. Shadid
James E. Shadid
U.S. Chief District Judge